IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **ROY KELLNER** | |
| Plaintiff, | Case No. 1:17-cv-04048 |
| vs. | Judge John Z. Lee |
| **LAKEVIEW LOAN SERVICING, LLC**, **CENLAR FSB, d/b/a CENTRAL LOAN ADMINISTRATION AND REPORTING**, **M&T BANK**, and **McCALLA RAYMER LEIBERT PIERCE, LLC**, | |
| Defendants. | |

**PLAINTIFF ROY KELLNER'S RESPONSE TO DEFENDANTS CENLAR FSB, d/b/a CENTRAL LOAN ADMINISTRATION AND REPORTING'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff Roy Kellner ("Kellner"), by and through his undersigned attorneys, for his response to the motion of Cenlar FSB, d/b/a Central Loan Administration and Reporting ("Cenlar"), to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"), states as follows:

**INTRODUCTORY STATEMENT**

Kellner asserts claims for relief against Cenlar for breach of contract, multiple violations of the specific rules under 12 C.F.R. § 1024 ("RESPA"), and a cause of action pursuant to 815 ILCS 505/1 ("ICFA"). Kellner brought this case because Cenlar, M&T Bank ("M&T"), and, through its agents, Lakeview Loan Servicing, LLC ("Lakeview"), paid someone else's property taxes and charged those amounts to Kellner. This led directly to his loan being placed in a false

-1-

state of default and ultimately to the filing of an improper foreclosure. Kellner attempted to bring these errors to Cenlar's attention through a notice of error sent on February 1, 2017, which Cenlar failed to respond to until May 4, 2017.

**LEGAL STANDARD**

The Supreme Court instructs that to survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 55556; see also *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject matter of the case to present a story that holds together."). All facts alleged by the plaintiff must be taken as true and all reasonable inferences from those facts must be made in the plaintiff's favor, although conclusory allegations that merely recite elements of a claim are not entitled to this presumption. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

Kellner's Amended Complaint meets and exceeds these standards.

**ARGUMENT**

**I.     Kellner adequately asserts a claim for breach of contract.**

"To state a claim for breach of contract under Illinois law, a plaintiff must allege the following elements: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015).

Cenlar was the subservicer of Kellner's mortgage loan until March 2, 2017. (Dkt. 47), ¶ 6. As the subservicer, Cenlar was responsible for collecting monthly payments from Kellner, allocating those payments between principal, interest, fees, and escrow, and accounting for and forwarding portions of those monthly receipts to the loan's owner. (Dkt. 47), ¶¶ 23-24.

Cenlar claims that it cannot be held liable for breach of contract because it was not a party to Kellner's mortgage loan. (Dkt. 57), p. 7. In support of this contention, Cenlar cites authority from courts in California and Pennsylvania. (Dkt. 57), p. 7. However, Seventh Circuit and the Northern District of Illinois hold otherwise. *See e.g., In Re Ocwen Loan Servicing, LLC Mortg. Servicing Lit.*, 491 F.3d 638, 645 (7th Cir. 2007) ("If an original mortgagee can be sued under state law for breach of contract, so may the partial assignee if he violates the terms of the part of the mortgage loan contract that has been assigned to him."); *Kesten v. Ocwen Loan Servicing, LLC*, No. 11 C 6981, 2012 WL 426933, at *7 (N.D. Ill. Feb. 9, 2012) (Denial of servicer's motion to dismiss breach of contract claim, stating that the homeowner could "state a claim for breach of contract under the theory that certain obligations under the contract were assigned" to the servicer). In *In Re Ocwen*, the Seventh Circuit stated:

> [S]ervicing refers to the exercise of rights that are conferred by a partial assignment of a mortgage by the mortgagee. Instead of assigning the entire mortgage to Ocwen, the mortgagee in this case assigned some of the rights created by the mortgage contract - the "servicing rights" - to Ocwen, which according to the complaint proceeded to violate its contractual obligations. It is no different than if the original mortgagee, or an assignee of the entire mortgage, had violated the terms of the mortgage or defrauded the mortgagor.

491 F.3d at 645.

Here, Cenlar was assigned the "servicing rights" or, possibly better labeled "subservicing rights," from Lakeview, which was assigned its servicing rights from the owner and holder of the

subject note and mortgage. (Dkt. 47), ¶ 23. Like in *In Re Ocwen*, Cenlar also charged unauthorized late fees and improperly increased Kellner's monthly payment, consequently violating the terms of the mortgage loan contract. (Dkt. 47), ¶¶ 48, 52, 56.

There is no requirement to "plead any legal theories" in order to allege that Cenlar was assigned part of the mortgage agreement at this stage of litigation. *Kesten*, 2012 WL 426933, at *7 (quoting *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005). Kellner has pled sufficient facts in the Amended Complaint to give him the right to recover from Cenlar. *Id.* Next, Cenlar states that Kellner has only alleged in a conclusory fashion that Cenlar was the agent of Lakeview Loan Servicing, LLC. (Dkt. 57), p. 8. However, Kellner has pled sufficient facts to establish the existence of an agency relationship. Cenlar serviced Kellner's mortgage loan as subservicer for Lakeview and the owner and holder of the subject note and mortgage. (Dkt. 47) ¶¶ 5-6; Cenlar collected and applied payments on behalf of Lakeview and the owner and holder of the subject note and mortgage. (Dkt. 47), ¶¶ 29, 31, 40, 49; Cenlar sent loan statements to Kellner on behalf of Lakeview and the owner and holder of the subject note and mortgage. (Dkt. 47), ¶¶ 30, 32, 35, 37, 39, 41, 43, 46, 55; Cenlar sent Kellner delinquent notices on behalf of Lakeview and the owner and holder of the subject note and mortgage. (Dkt. 47), ¶¶ 48, 51-53; and Cenlar reported to credit bureaus on behalf of Lakeview and the owner and holder of the subject note and mortgage. (Dkt. 47), ¶ 54. These allegations support that Lakeview and Cenlar entered into an agency relationship where Cenlar was to collect and apply payments and provide Kellner with statements and notices regarding his mortgage loan.

The Mortgage spells out many of the duties commonly considered to be "loan servicing" under the headings "Uniform Covenants" and "Non-Uniform Covenants." (Dkt. 47, Ex. 1), pp.

6-12. The absence of words "loan servicing" or "loan servicer" does not extinguish Kellner's rights under those provisions. Cenlar continues by falsely stating that Kellner has not alleged what entity assigned a portion of the loan to Cenlar. (Dkt. 57), p. 8. A review of the Amended Complaint shows that Kellner alleges that "The owner of Kellner's Loan assigned a portion of that loan to Lakeview and in turn and at different times to sub-servicers Cenlar and M&T. In particular, the owner assigned the right to "service" the Loan..." (Dkt. 47), ¶ 23. In Exhibit 35 to the Amended Complaint, Cenlar informed Kellner that "The Loan was originated by Movement Mortgage, LLC and subsequently placed in a mortgage-backed security of Ginnie Mae." (Dkt. 47, Ex. 35), p. 2.

Next, Cenlar contends that Kellner failed to sufficiently allege facts to show that Cenlar breached the parties' contract. (Dkt. 57), p. 8. Cenlar overlooks multiple paragraphs of the Amended Complaint where Kellner states that Cenlar failed to properly maintain Kellner's escrow account. (Dkt. 47), ¶¶ 34, 36, 38-39, 50, 57, 107. Kellner's Mortgage specifically obligated Cenlar, through assignment, to apply all payments in accordance with Section 3 of the Mortgage. (Dkt. 47, Ex. 1), p. 7, § 3. Cenlar had a fiduciary duty to maintain, disburse, and account to Kellner for all escrow items deposited in his account, according to terms contained in Kellner's Loan. (Dkt. 47), ¶ 25. Kellner alleges that Cenlar breached its implied covenant of good faith and fair dealing (Dkt. 47), ¶ 123, however, Cenlar ignores it has a specific independent obligation through its assigned duties to properly maintain Kellner's escrow account. This Court has found that alleging paying property taxes for other parcels and creating a negative escrow balance may be sufficient to support a breach of contract claim at the motion to dismiss stage. *Ploog v. HomeSide Lending, Inc.*, 209 F. Supp. 2d 863 (N.D. Ill. 2002) (Good

faith and fair dealing). Also, "mismanagement of an escrow may give rise to a cause of action for a breach of fiduciary duty." *Id.* at 874 (quoting *Choi v. Chase Manhattan Mortgage Co.*, 63 F. Supp. 2d 874, 885 (N.D. Ill. 1999)); see also *Poindexter v. Nat'l Mortgage Co.*, 1995 WL 242287, at *4 (N.D. Ill.); Additionally, Cenlar fails to dispute Kellner's claims to damages under a breach of contract theory.

Viewed in a light most favorable to Kellner, as is required at this early stage of the litigation, the allegations of the Amended Complaint are sufficient to state a claim for breach of contract.

## II. Kellner adequately asserts a claim for a violation of RESPA.

Servicers are required to establish an address that borrowers must use to submit requests for information and notices of error. 12 C.F.R. § 1024.35(c); 12 C.F.R. § 1024.36(b). If a servicer lists "any contact address" on its website, the servicer "must post the designated address on any website maintained by the servicer." *Id.*; See *Cole v. JPMorgan Chase Bank, N.A.*, No. 2:15-CV-2634, 2016 WL 4491731 (S.D. Ohio Aug. 25, 2016) ("The word 'any,' as used in the regulation, is unambiguous."). The court in *Cole* found that the plaintiff stated a claim, under 12 C.F.R. § 1024.35(c), where the servicer's website provided a different designated address than the servicer's claimed designated address. *Id.* at *4-5. Servicers are permitted to designate multiple office addresses for receiving requests for information and notices of error. 12 C.F.R. § 1024 (Supp. I, cmts. 35(c)(3), 36(b)(3)) (Official Bureau Interpretations). However, "a servicer is required to comply with the requirements of [§ 1024.35 and § 1024.36] with respect to [requests for information and notices of error] received at any such designated address regardless of whether that specific address was provided to a specific borrower asserting an error." *Id.*; *Cole*,

2016 WL 4491731 at *4-5 (The court was not persuaded by the arguments from the servicer that it provided the correct designated address to the plaintiff or that its correct designated address was "available at a Chase website").

Cenlar argues that Kellner failed to send his requests for information and notices of error to Cenlar's designated address for those documents. (Dkt. 57), p. 10. Cenlar claims that the exclusive address is "P.O. Box 77423, Ewing, NJ 08628." *Id.* However, the 77423 address is not Cenlar's exclusive address. On its website, Cenlar maintains the address "Attn: Escalation Case Unit, P.O. Box 77404, Ewing, NJ 08628" for the purposes of "Fraudulent Servicing Practices" and "Non-compliance with required time frames for borrower outreach, evaluation or responses." https://www.loanadministration.com/loanadministration/cenlar_Escalations.html (last visited Aug. 31, 2017); Exhibit A.[1] The website states, "Your issue will be addressed and if applicable, you can expect a written response to be sent within 15 days of receipt." *Id.* Cenlar received Kellner's first notice of error on February 7, 2017, and failed to respond within the fifteen days stated its own website. (Dkt. 47), ¶ 62. Cenlar also failed to provide any acknowledgement or response to this notice of error pursuant to its obligations under RESPA. (Dkt. 47), ¶ 134. Cenlar repeated this pattern and practice of behavior for a second notice of error and third notice of error. *Id.*

As the plain text of the regulations state, Cenlar is required to post its claimed designated address on "any website" where it lists "any contact address." 12 C.F.R. § 1024.35(c); 12 C.F.R. § 1024.36(b). Cenlar was required to comply with RESPA, even though the claimed designated

---

[1] *Cause of Action v Chicago Transit Authority*, 815 F. 3d 267, n. 13. (7th Cir. 2016) ("[w]e may take judicial notice of matters of public record." *Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.,* 298 F.3d 600, 607 (7th Cir.2002) (taking judicial notice of the ownership of a bank from FDIC website); *accord LaBella Winnetka, Inc. v. Vill. of Winnetka,* 628 F.3d 937, 944 n. 3 (7th Cir. 2010) (taking judicial notice of information on Village of Winnetka's website); *Denius v. Dunlap,* 330 F.3d 919, 926 (7th Cir. 2003)(taking judicial notice of military personnel records from National Personnel Records Center website).

address was provided to Kellner, because Cenlar placed the 77404 address on its website as a contact address and then actually received requests for information and notices of error at the 77404 address. 12 C.F.R. § 1024 (Supp. I, cmts. 35(c)(3), 36(b)(3)). It is reasonable to infer that a website which provides a contact address for "Fraudulent Servicing Practices" and "Non-compliance with required time frames for borrower outreach, evaluation or responses" would be used for those purposes. It is also a reasonable to expect a response when a servicer's website says that the servicer will address the issue and send that response in a stated timeframe.

Other district courts have found that claims alleging facts showing that requests for information and notices of error were sent to a contact address, which conflicts with the servicer's claimed designated address, sufficiently comply with RESPA. See *Goss v. Citimortgage, Inc.*, No. 16-14391, 2017 WL 2782315 (E.D. Mich. June 27, 2017) (Servicer failed to prove establishment of a designated address where it failed to include claimed correct address on its website, a website that provided other contact addresses); *Vilkofsky v. Specialized Loan Servicing, LLC*, No. 2:16-CV-01291-NBF, 2017 WL 2573874 (W.D. Pa. June 14, 2017) (Claim that servicer responded to a notice of error that was sent to an address so similar to the designated address proceeded to discovery).

Cenlar next argues that Kellner has failed to allege actual damages as a result of Cenlar's failure to respond to his notices of error and requests for information. (Dkt. 57), pp. 10-11. On the contrary, the Amended Complaint alleges the following direct damages flowing from Cenlar's conduct: Cenlar's false reports to credit reporting agencies negatively affected Kellner's credit (Dkt. 47), ¶ 54; Cenlar overpaid taxes and improperly imposed late fees and property inspection fees (Dkt. 47), ¶ 56; Cenlar refused to correct its errors and caused Kellner to incur

legal expenses (Dkt. 47), ¶ 108; Kellner could not refinance this loan or loans on other investment property (Dkt. 47), ¶ 109; and Cenlar's actions caused Kellner to suffer emotional distress (Dkt. 47), ¶ 110.

Cenlar's last RESPA-related argument states that Kellner has not stated sufficient facts to show that Cenlar engaged in a pattern of practice of noncompliance with RESPA's obligations. (Dkt. 57), pp. 11-12. Kellner specifically alleges that Cenlar failed to timely acknowledge three notices of error, timely respond to those three notices of errors, and failed to correct multiple servicing errors. (Dkt. 47), ¶ 134. Kellner also specifically alleges that Cenlar failed to timely acknowledge and timely respond to requests for information. (Dkt. 47), ¶ 67.

Additionally, there is no requirement that "more than one individual must be affected in order to satisfy the statutory language." *Quimby v. Caliber Home Loans*, No. 1:14-CV-01335-JMS, 2015 WL 3751511, at *2 (S.D. Ind. Apr. 22, 2015), *report and recommendation adopted in part*, No. 1:14-CV-01335-JMS, 2015 WL 3751532 (S.D. Ind. June 16, 2015) ("To be a pattern or practice of noncompliance, Quimby must allege Caliber violated RESPA in responding to a qualified written request on more than one occasion."). Cenlar's citation to *Golbeck v. Johnson Blumberg & Assocs., LLC*, No. 16-CV-6788, 2017 WL 3070868 (N.D. Ill. July 19, 2017) omits critical language from the opinion:

> To state such a claim, **some courts** have required allegations sufficient to show that defendant's RESPA violations are a "standard or routine way of operating." *In re Maxwell*, 281 B.R. 101, 123 (Bankr. D. Mass. 2002) (citation omitted); accord *Renfroe v. Nationstar Mortg.*, LLC, 822 F.3d 1241, 1247 (11th Cir. 2016). **Other courts require** allegations of violations involving other borrowers. See *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 523 (10th Cir. 2013).

*Golbeck*, 2017 WL 3070868 at *12 (emphasis added). While there are differing rulings on the issue of pattern and practice of noncompliance, Cenlar fails to cite to authority in this district that requires allegations regarding other borrowers.

Viewed in a light most favorable to Kellner, as is required at this early stage of the litigation, the allegations of the Amended Complaint are sufficient to state a claim pursuant to RESPA for violations of 12 C.F.R. § 1024.35 and 12 C.F.R. § 1024.36.

**III.     Kellner adequately asserts a claim for a violation of the ICFA.**

The requisite elements for an Illinois Consumer Fraud Act claim are: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010); *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 574 (7th Cir. 2012). An individual plaintiff must additionally show actual damages caused by defendant's deceptive act. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014).

Kellner adequately pleads an ICFA claim. Cenlar contends that Kellner's ICFA claim is based on the same allegations as stated in Kellner's breach of contract claim. (Dkt. 57), p. 13. "When allegations of consumer fraud arise in a contractual setting, the plaintiff must prove that the defendant engaged in deceptive acts or practices distinct from any underlying breach of contract." *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011). The Amended Complaint does this: Kellner specifically asserts that Cenlar deceptively and unfairly sent four delinquent notices - each falsely stating that Kellner failed to timely pay, falsely stating an incorrect amount due, and each asserting an unauthorized late fee. (Dkt. 47), ¶¶ 48, 51-53.

Additionally, Cenlar falsely reported, on multiple occasions, to one or more credit bureaus that Kellner had failed to timely pay and that his payment was past due. Dkt. 47, ¶ 54. Kellner repeats these allegations in Paragraph 150 of the Amended Complaint, however it appears Cenlar stopped reading after the first sentence. (Dkt. 47), ¶ 150.

Kellner is not alleging that Cenlar engaged in, "A single course of conduct by [Cenlar] toward [just Kellner]." (Dkt. 57), p. 13 (citing *Skyline International Development v. Citibank*, 302 Ill. App. 3d 79, 85 (1st Dist. 1998). Kellner alleges that his situation is one example of Cenlar's manner of acting, which affects consumers generally. (Dkt. 47), ¶ 158. Kellner alleges that Cenlar "receives compensation for servicing loans that are in default which is greater than the compensation [it] receives for loans not in default." *Id.* Cenlar's deceptive and unfair business practices employed to meet this goal take the form of the false delinquency notices, assessment of improper late fees and charges, and false information transmitted to the credit bureaus. Cenlar did not make a mistake that only affects Kellner. Rather, it actively tried to obtain additional compensation by charging unauthorized fees to "borrowers like Kellner for loans alleged to be in default." *Id.*

Finally, Cenlar wants credit for timely disclosing "the property tax payments it made." (Dkt. 47), pp. 3, 14. "It is worth noting" that paying property taxes for Kellner does not excuse paying property taxes for additional properties, not owned by Kellner and using Kellner's money. (Dkt. 47), ¶¶ 33, 39, 45, 57. Paying Kellner's property taxes does not permit Cenlar to refund itself a portion and then keep the money instead of restoring it to Kellner's escrow account. (Dkt. 47), ¶¶ 36, 38.

The only requisite element for an Illinois Consumer Fraud Act claim that Cenlar disputes appears to be Kellner's claim of "a deceptive or unfair act or practice by the defendant." *Siegel*, 612 F.3d at 934; *Wigod*, 673 F.3d at 574. Cenlar does not dispute Kellner's claim that "Cenlar ..., by and through [its] conduct, intended that Kellner would rely on its misrepresentations about the real estate taxes, the escrow and the Loan." (Dkt. 47), ¶ 154. Cenlar does not dispute Kellner's claim that "Cenlar['s] … conduct occurred during the course of trade or commerce." (Dkt. 47), ¶ 153. Additionally, Cenlar does not dispute that Kellner has shown actual damages caused by Cenlar's deceptive actions. (Dkt. 47), ¶¶ 159-160; See *Camasta*, 761 F.3d at 739.

Viewed in a light most favorable to Kellner, as is required at this early stage of litigation, the allegations of the Amended Complaint are sufficient to state a claim pursuant to the ICFA.

## CONCLUSION

Kellner has sufficiently pled his claims against Cenlar and the Motion should therefore be denied.

**WHEREFORE**, Plaintiff Roy Kellner respectfully requests this Court deny Defendant Cenlar FSB, d/b/a Central Loan Administration and Reporting's Motion to Dismiss and for all other relief this Court may deem just and proper.

*Respectfully submitted,*

**ROY KELLNER**

By: /s/ Rusty A. Payton
    Rusty A. Payton
    Marc E. Dann
    DannLaw
    20 North Clark St., Suite 3300
    Chicago, IL 60602
    *email: payton@dannlaw.com*
    Ph. and Fax: (312) 702-1000

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Response to Motion to Dismiss was served via the Court's Electronic Filing System on all parties and counsel of record on the following date.

Date: November 3, 2017                                      By: /s/ Rusty A. Payton

# SERVICE LIST

Colette M. Willer
Monique B. Howery
Reed Smith, LLP
10 S. Wacker Dr., 40th Fl.
Chicago, IL 60606
312-207-1000
cwiller@reedsmith.com
mhowery@reedsmith.com
*Counsel of Record for Defendants Lakeview Loan Servicing and M&T Bank*


David M. Schultz
Margaret M. Breeden
Louis J. Manetti
Hinshaw & Culbertson LLP
222 N. LaSalle, St., Ste. 300
Chicago, IL 60601
312-704-3417
dschultz@hinshawlaw.com
mbreeden@hinshawlaw.com
lmanetti@hinshawlaw.com
*Counsel of Record for Defendant Cenlar FSB*


Brian R. Merfeld
McCalla Raymer Leibert Pierce, LLC
1 N. Dearborn St., Ste. 1300
Chicago, IL 60602
312-676-7368
brian.merfeld@mccalla.com
*Counsel of Record for McCalla Raymer Leibert Pierce, LLC*