# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROY KELLNER<br><br>Plaintiff,<br><br>vs.<br><br>LAKEVIEW LOAN SERVICING, LLC, CENLAR FSB, d/b/a CENTRAL LOAN ADMINISTRATION AND REPORTING, M&T BANK, and McCALLA RAYMER LEIBERT PIERCE, LLC,<br><br>Defendants. | Case No. 1:17-cv-04048<br><br>Judge John Z. Lee |

**PLAINTIFF ROY KELLNER'S RESPONSE TO DEFENDANTS LAKEVIEW LOAN SERVICING, LLC AND M&T BANK'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff Roy Kellner ("Kellner"), by and through his undersigned attorneys, for his response to the motion of Lakeview Loan Servicing, LLC ("Lakeview") and M&T Bank (M&T) (collectively referred to hereinafter as "Defendants"), to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"), states as follows:

**INTRODUCTORY STATEMENT**

Kellner asserts claims for relief against these defendants for breach of contract, violations of the Real Estate Settlement Procedures Act's implementing regulation, 12 C.F.R. § 1024 ("RESPA"), violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 ("ICFA"), and violations of the Fair Debt Collection Practices Act, 15 U.S.C. §

1692k ("FDCPA"). Kellner brought this case because defendants, in addition to defendant Cenlar FSB ("Cenlar"), paid someone else's property taxes and charged those amounts to Kellner. This led directly to his loan being placed in a false state of default and ultimately to the filing of an improper foreclosure. Stated differently, even though Kellner made all mortgage payments on time and in full, he found himself in default and facing an improperly filed foreclosure - all due to the avoidable, yet purposeful conduct of defendants.

## LEGAL STANDARD

The Supreme Court instructs that to survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 55556; see also *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject matter of the case to present a story that holds together."). All facts alleged by the plaintiff must be taken as true and all reasonable inferences from those facts must be made in the plaintiff's favor, although conclusory allegations that merely recite elements of a claim are not entitled to this presumption. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

Kellner's Amended Complaint meets and exceeds these standards.

## ARGUMENT

I.  **Kellner adequately asserts a claim for breach of contract.**

"To state a claim for breach of contract under Illinois law, a plaintiff must allege the following elements: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015).

Kellner alleges that Lakeview is the servicer of his mortgage loan. (Dkt. 47), ¶ 5; (Dkt. 47, Ex. 35), p. 2. He also alleges that M&T has been the subservicer of Kellner's mortgage loan since March 2, 2017. (Dkt. 47), ¶ 7; (Dkt. 47, Ex. 24), p. 3. As the subservicer, M&T is responsible for collecting monthly payments from Kellner, allocating those payments between principal, interest, fees, and escrow, and accounting for and forwarding portions of those monthly receipts to the loan's owner. See (Dkt. 47), ¶¶ 23-24.

In a footnote, defendants state that the Amended Complaint fails to allege that these defendants are parties to the Loan. (Dkt. 62), p. 7, fn. 1. However, Kellner specifically alleges that "The owner of Kellner's Loan assigned a portion of that loan to Lakeview and in turn and at different times to sub-servicers Cenlar and M&T." (Dkt. 47), ¶ 23; see Mortgage, (Dkt. 47, Ex. 1), p. 10, § 12; *Kaplan v. Shure Bros.*, 266 F.3d 598, 602 (7th Cir. 2001) ("Privity accompanies the valid assignment of rights under a contract because it puts the assignee in the shoes of the assignor—'because the assignor was in privity with the opposite contracting party, so is the assignee.' "); *In Re Ocwen Loan Servicing, LLC Mortg. Servicing Lit.*, 491 F.3d 638, 645 (7th Cir. 2007) ("If an original mortgagee can be sued under state law for breach of contract, so may the partial assignee if he violates the terms of the part of the mortgage loan contract that has been assigned to him."); *Kesten v. Ocwen Loan Servicing, LLC*, No. 11 C 6981, 2012 WL 426933, at *7 (N.D. Ill. Feb. 9, 2012) (Denial of servicer's motion to dismiss breach of contract claim,

stating that the homeowner could "state a claim for breach of contract under the theory that certain obligations under the contract were assigned" to the servicer). In *In Re Ocwen*, the Seventh Circuit stated:

> At least so far as bears on this case, servicing refers to the exercise of rights that are conferred by a partial assignment of a mortgage by the mortgagee. Instead of assigning the entire mortgage to Ocwen, the mortgagee in this case assigned some of the rights created by the mortgage contract-the "servicing rights"-to Ocwen, which according to the complaint proceeded to violate its contractual obligations. It is no different than if the original mortgagee, or an assignee of the entire mortgage, had violated the terms of the mortgage or defrauded the mortgagor.

491 F.3d at 645.

Defendants initially asserted that Kellner has failed to "allege facts indicating Lakeview or M&T breached a particular provision or express contractual term of the note or mortgage." (Dkt. 62), p. 7. Defendants overlook multiple paragraphs of the Amended Complaint where Kellner states that the Defendants failed to properly maintain Kellner's escrow account. (Dkt. 47), ¶¶ 34, 36, 38-39, 50, 57, 78, 107. Kellner's Mortgage specifically obligates Defendants, through assignment, to apply all payments in accordance with Section 3. (Dkt. 47, Ex. 1), p. 7, § 3. Defendants have a fiduciary duty to maintain, disburse, and account to Kellner for all escrow items deposited in his account, according to terms contained in Kellner's mortgage loan. (Dkt. 47), ¶ 25.

This Court has found that alleging paying property taxes for other parcels and creating a negative escrow balance may be sufficient to support a breach of contract claim at the motion to dismiss stage. *Ploog v. HomeSide Lending, Inc.*, 209 F. Supp. 2d 863 (N.D. Ill. 2002) (Good faith and fair dealing). Also, "mismanagement of an escrow may give rise to a cause of action for a breach of fiduciary duty." *Id.* at 874 (quoting *Choi v. Chase Manhattan Mortgage Co.*, 63 F.

Supp. 2d 874, 885 (N.D. Ill. 1999)); see also *Poindexter v. Nat'l Mortgage Co.*, 1995 WL 242287, at *4 (N.D. Ill.); Additionally, Defendants fail to dispute Kellner's claims to damages under a breach of contract theory.

Viewed in a light most favorable to Kellner, as is required at this early stage of the litigation, the allegations of the Amended Complaint are sufficient to state a claim for breach of contract.

**II.     Kellner adequately asserts a claim for a violation of RESPA because he has sufficiently alleged actual damages and evidence of a pattern and practice of non-compliance.**

Kellner has plead sufficient facts to establish the existence of an agency relationship between Cenlar and Lakeview. Cenlar serviced Kellner's mortgage loan as subservicer for Lakeview and the owner and holder of the subject note and mortgage. (Dkt. 47) ¶¶ 5-6; Cenlar collected and applied payments on behalf of Lakeview and the owner and holder of the subject note and mortgage. (Dkt. 47), ¶¶ 29, 31, 40, 49; Cenlar sent loan statements to Kellner on behalf of Lakeview and owner and holder of the subject note and mortgage. (Dkt. 47), ¶¶ 30, 32, 35, 37, 39, 41, 43, 46, 55; Cenlar sent Kellner delinquent notices on behalf of Lakeview and the owner and holder of the subject note and mortgage. (Dkt. 47), ¶¶ 48, 51-53; and Cenlar reported to credit bureaus on behalf of Lakeview and the owner and holder of the subject note and mortgage. (Dkt. 47), ¶ 54. These allegations support that Lakeview and Cenlar entered into an agency relationship where Cenlar was to collect and apply payments and provide Kellner with notices regarding his mortgage loan.

Defendants assert that Kellner failed to allege actual damages as a result of M&T's failure to respond to his notices of error. (Dkt. 62), p. 9. However, Defendants ignore the specific

allegations contained in the Amended Complaint detailing the circumstances that could have been avoided had M&T acted in compliance with RESPA. M&T failed to correct the errors alleged by Kellner, continued to maintain an improper escrow, continued to improperly apply payments and convert escrow deposits made by Kellner, continued to assess improper fees and charges, and had simply ignored Kellner's earnest efforts to have the errors in servicing corrected. (Dkt. 47), ¶ 78. Even though Defendants point out that M&T only subserviced the Loan for two months, M&T was very busy in those two months, as it sent to Kellner seven pieces of correspondence containing false information during that time. (Dkt. 47), ¶¶ 79-85. Ultimately, a wrongful foreclosure was filed - after the instant case was commenced and after defendants were undeniably on notice that there were loan servicing errors that should have raised a red flag.(Dkt. 47), ¶¶ 92-93.

Kellner specifically alleges emotional distress as a result of M&T and Lakeview's actions. (Dkt. 47), ¶¶ 87, 110. In furtherance of Defendants' disregard for Kellner's wellbeing, Defendants hired McCalla Raymer Leibert Pierce, LLC ("Pierce") to file a wrongful foreclosure action in the Circuit Court of Cook County, Illinois ((Dkt. 47), ¶ 92), even though Defendants were aware of the nature of the instant matter ((Dkt. 47), ¶ 91). The foreclosure case was dismissed only after Kellner appeared through counsel and filed a motion seeking dismissal.[1] Kellner alleges that his credit was harmed by M&T when it "improperly and incorrectly reported to various, unknown Credit Reporting Agencies that the Loan was '30 Days Past Due' on at least one or more occasions." (Dkt. 47), ¶¶ 98-100. Keller could not refinance the Loan or other loans

---

[1] See Docket in *Lakeview Loan Servicing v Kellner*, Case No. 2017-CH-11606 found at:
https://courtlink.lexisnexis.com/cookcounty/FindDock.aspx?NCase=&SearchType=2&Database=3&case_no=&Year=&div=&caseno=&PLtype=2&sname=Kellner%2C+roy&CDate=

on his investment properties due to the pending state of default and the foreclosure action. (Dkt. 47), ¶¶ 101, 109.

Defendants' last RESPA-related argument is that Kellner has not stated sufficient facts to show that Defendants engaged in a pattern of practice of noncompliance with RESPA's obligations. (Dkt. 62), p. 9. Kellner specifically alleges that Lakeview's agent Cenlar failed to timely acknowledge three notices of error, timely respond to those three notices of errors, and failed to correct multiple servicing errors. (Dkt. 47), ¶ 134. Kellner also specifically alleges that Cenlar failed to timely acknowledge and timely respond to a request for information. (Dkt. 47), ¶ 67. In regards to M&T, Kellner alleges that M&T failed to properly respond to a notice of error and failed to provide all information and/or documentation requested by a request for information. (Dkt. 47), ¶ 143. M&T failed to correct the servicing errors of which it had direct knowledge through Kellner's notice of error. Additionally, servicer Lakeview and previous subservicer Cenlar received a notice of errors that would have been provided to new subservicer M&T when subservicing was transferred on March 2, 2017.

Viewed in a light most favorable to Kellner, as is required at this early stage of the litigation, the allegations of the Amended Complaint are sufficient to state a claim pursuant to RESPA for violations of 12 C.F.R. § 1024.35 and 12 C.F.R. § 1024.36.

**III.    Kellner adequately asserts a claim for a violation of the ICFA.**

A careful review of Count Four of the Amended Complaint demonstrates that Kellner adequately pled his ICFA claim against Defendants. See (Dkt. 47), ¶¶ 147-163. Kellner details Cenlar and M&T's deceptive actions and unfair practices in Paragraphs 150-152 of the Amended Complaint. (Dkt. 47), ¶¶ 150-152. Kellner alleges the remaining four elements for an ICFA

claim in Paragraph 154 (Kellner's reliance on Cenlar and M&T's misrepresentations), Paragraph 153 (Cenlar and M&T's conduct occurred during the course of trade or commerce), and Paragraphs 159-160 (Causation and actual damages). (Dkt. 47), ¶¶ 153-154, 159-160.

Defendants argue that Kellner's ICFA claim fails because it asserts the same allegations as stated in Kellner's breach of contract claim. (Dkt. 62), p. 11. The Amended Complaint sets out facts alleging conduct beyond breach of contract. Specifically, Kellner asserts that Cenlar deceptively and unfairly sent four delinquent notices - each falsely stating that Kellner failed to timely pay, falsely stating an incorrect amount due, and each asserting an unauthorized late fee. (Dkt. 47), ¶¶ 48, 51-53. Additionally, Cenlar falsely reported, on multiple occasions, to one or more credit bureaus that Kellner had failed to timely pay and that his payment was past due. (Dkt. 47), ¶ 54. M&T sent seven pieces of correspondence to Kellner containing false representations. (Dkt. 47), ¶¶ 81-85. After this action was filed, Defendants brought a wrongful foreclosure action against Kellner which was dismissed only after Kellner appeared in that case through counsel and affirmatively sought dismissal. (Dkt. 47), ¶ 92. Kellner repeats these allegations in Paragraph 150 of the Amended Complaint, however it appears Defendants, like Cenlar before them, stopped reading after the first sentence. (Dkt. 47), ¶ 150.

Defendants and Cenlar's conduct rises far above mere servicing errors. See (Dkt. 62), p. 12. Kellner alleges that he and his counsel repeatedly notified Cenlar and Lakeview about the servicing errors, but M&T still made clear misrepresentations through its notice of error response. (Dkt. 47), ¶ 151. Mere servicing errors do not survive four notices of error, a federal lawsuit, and then an erroneous foreclosure action. The foreclosure was dismissed only after Kellner appeared and filed his motion to dismiss the case. Further, Defendants' counsel, Megan

E. Farrell of Reed Smith, instructed Kellner's counsel on September 6, 2017 that the foreclosure action would be dismissed "as a showing of good faith," while at the same time falsely stating that Kellner was in default and has no damages stemming from the foreclosure action. (Dkt. 47), ¶¶ 104-105.

Kellner is not alleging that M&T engaged in "a single course of conduct" toward Kellner. (Dkt. 62), p. 12. Kellner alleges that his situation is one example of Defendants and Cenlar's manner of acting, which affects consumers generally. (Dkt. 47), ¶ 158. Kellner alleges that Defendants and Cenlar "receive compensation for servicing loans that are in default which is greater than the compensation each receives for loans not in default." (Dkt. 47), ¶ 158. Defendants and Cenlar's deceptive and unfair business practices employed to meet this goal take the form of the false delinquency notices and false information transmitted to the credit bureaus. Defendants and Cenlar did not make mistakes that only affects Kellner. Rather, they actively tried to obtain additional compensation by charging unauthorized fees to "borrowers like Kellner for loans alleged to be in default." (Dkt. 47), ¶ 158.

Viewed in a light most favorable to Kellner, as is required at this early stage of litigation, the allegations of the Amended Complaint are sufficient to state a claim pursuant to the ICFA.

**IV. Kellner adequately asserts a claim for a violation of the FDCPA because Defendants are debt collectors.**

Kellner specifically alleges that Defendants are debt collectors in Paragraph 21 of the Amended Complaint. (Dkt. 47), ¶ 21. Kellner asserts that Lakeview and M&T are collecting the Loan as agents for the owner, the very definition of a "debt collector" under the FDCPA (Dkt. 47), ¶ 8. Kellner has attached Cenlar's response to Kellner's request for information that

specifically states "The Loan was originated by Movement Mortgage, LLC and subsequently placed in a mortgage-backed security of Ginnie Mae" and "Ginnie Mae has agreed under contract that [Lakeview] has the right to make all servicing decisions." (Dkt. 47, Ex. 35), p. 2. According to MERS Milestone Report, Movement Mortgage transferred the "Beneficial Rights" to Ginnie Mae on November 2, 2015 and transferred the "Servicing Rights" to Lakeview on December 30, 2015. (Dkt. 47, Ex. 35), p. 5.

Defendants make no claim that either Lakeview or M&T was the owner of the Loan during the time relevant to the Amended Complaint, but instead state that the acts of servicing and subservicing classify them as creditors pursuant to the FDCPA. (Dkt. 62), p. 13. Defendants rely on case law from various district courts to support this claim. (Dkt. 62), p. 13. These cases offer no support. First, in *Knobbe v. Bank of Am., N.A.*, No. 8:05CV489, 2007 WL 2822750, at *1 (D. Neb. Sept. 26, 2007), Bank of America issued a credit card to the plaintiff. In the instant matter, the Loan was "originated by Movement Mortgage, LLC and later placed in a mortgage-backed security guaranteed by Ginnie Mae." (Dkt. 47), ¶ 4. Lakeview does not claim it owns the Loan, and unlike Bank of America in *Knobbe*, is not collecting its own debt. Second, Defendants misread *Siwulec v. Chase Home Fin., LLC*, No. CIV.A. 10-1875, 2010 WL 5071353, at *3 (D.N.J. Dec. 7, 2010) and *Scott v. Wells Fargo Home Mortg. Inc.*, 326 F. Supp. 2d 709, 717 (E.D. Va.), because those courts found that Chase and Wells Fargo were creditors because the debts were not in default when they took over servicing. *Scott* does not stand for a blanket statement that all servicers are creditors, and it is certainly misleading to infer "well-settled" law supports this blanket statement. (Dkt. 62), p. 13. Defendants' string citations are similarly

unpersuasive because they all concern the issue of debts that were not in default when a servicer began servicing.

Defendants do not address Kellner's allegations that each violated 15 U.S.C. §§ 1692d, § 1692e(2), 1692e(5), 1692e(10), or 1692f. (Dkt. 47), ¶¶ 165-172. Additionally, Defendants do not contest Kellner's claimed damages. (Dkt. 47), ¶¶ 173-174. Defendants only argue that they are not debt collectors, but provide no factual or relevant legal support to contradict the allegations in the Amended Complaint.

Viewed in a light most favorable to Kellner, as is required at this early stage of litigation, the allegations of the Amended Complaint are sufficient to state a claim pursuant to the FDCPA.

## CONCLUSION

Kellner has sufficiently pled his claims against Defendants and the Motion should therefore be denied.

**WHEREFORE**, Plaintiff Roy Kellner respectfully requests this Court deny Defendant Lakeview Loan Servicing, LLC and M&T Bank's Motion to Dismiss Plaintiff's First Amended Complaint and for all other relief this Court may deem just and proper.

*Respectfully submitted,*

**ROY KELLNER**

By: /s/ Rusty A. Payton
    Rusty A. Payton
    Rusty A. Payton
    Marc E. Dann
    DannLaw
    20 North Clark St., Suite 3300
    Chicago, IL 60602
    *email: payton@dannlaw.com*
    Ph. and Fax: (312) 702-1000

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Response to Motion to Dismiss was served via the Court's Electronic Filing System on all parties and counsel of record on the following date.

Date: November 3, 2017                                             By: /s/ Rusty A. Payton

## SERVICE LIST

Colette M. Willer
Monique B. Howery
Reed Smith, LLP
10 S. Wacker Dr., 40th Fl.
Chicago, IL 60606
312-207-1000
cwiller@reedsmith.com
mhowery@reedsmith.com
*Counsel of Record for Defendants Lakeview Loan Servicing and M&T Bank*

David M. Schultz
Margaret M. Breeden
Louis J. Manetti
Hinshaw & Culbertson LLP
222 N. LaSalle, St., Ste. 300
Chicago, IL 60601
312-704-3417
dschultz@hinshawlaw.com
mbreeden@hinshawlaw.com
lmanetti@hinshawlaw.com
*Counsel of Record for Defendant Cenlar FSB*

Brian R. Merfeld
McCalla Raymer Leibert Pierce, LLC
1 N. Dearborn St., Ste. 1300
Chicago, IL 60602
312-676-7368
brian.merfeld@mccalla.com
*Counsel of Record for McCalla Raymer Leibert Pierce, LLC*